**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 6 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

THE BEVILL COMPANY, INC.,

Plaintiff-Appellant,

v.

SPRINT/UNITED MANAGEMENT
COMPANY,

Defendant-Appellee.

No. 02-3264
(D.C. No. 01-CV-2524-CM)
(D. Kan.)

**ORDER AND JUDGMENT** *

Before **TYMKOVICH** , **HOLLOWAY** , and **ANDERSON** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

The primary focus of the parties to this appeal has been on whether the

district court correctly ruled that certain contract provisions permitted termination

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

of an agreement for convenience without breach. Our immediate focus, however, is on a much more basic question: does the plaintiff-appellant even have standing to challenge/enforce the terms of the contract?

This action for breach of contract and related claims was filed by "The Bevill Company, Inc., . . . incorporated under the laws of the state of New Hampshire." Aplee. App., doc. 1 at 1. However, the contract underlying these claims was not executed by that Bevill company (plaintiff "Bevill N.H."), which did not even exist at the time. Rather, the contract specifically recited that it was executed "between Sprint/United Management Company . . . and The Bevill Company, Inc., a Delaware Corporation." Aplt. App. at 6, 24. The latter Bevill company ("Bevill Del."), on the other hand, had been dissolved long before this suit was filed. This discrepancy between contracting-party and suing-party casts doubt on plaintiff Bevill N.H.'s standing–a jurisdictional cloud that cannot be ignored in favor of a decision on the merits, regardless of whether such a decision might be readily reached. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 86, 94-95 (1998); *see, e.g.*, *Castle v. United States*, 301 F.3d 1328, 1337-39 (Fed. Cir. 2002) (holding non-parties to contract lacked standing to sue for breach and, applying *Steel Co.*, vacating district court's decision on merits of claim), *cert. denied*, 123 S. Ct. 2572 (2003).

"Standing [under Article III] is, of course, a threshold issue in *every case* before a federal court, and diversity claims are no exception." *Hutchinson v. Pfeil*, 211 F.3d 515, 523 (10 th Cir. 2000) (quotation omitted). To have standing under Article III, a plaintiff must seek redress for the "'invasion of a legally protected interest.'" *Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272, 1280 (10th Cir.) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)), *cert denied*, 537 U.S. 947 (2002).

While Article III standing is by definition a question of federal law, state law may create the asserted legal interest upon which the federal analysis turns; indeed, "[i]f that were not so, there would not be Article III standing in most diversity cases, including run-of-the-mill contract and property disputes." *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9 th Cir. 2001) (following *FMC Corp. v. Boesky*, 852 F.2d 981, 992 (7 th Cir. 1988)). In this regard, Kansas follows the general rule that one who is not a party to a contract lacks standing to sue for its breach, absent a special status such as that of a third-party beneficiary, corporate successor, or assignee of a contracting party. *See, e.g., Bodine v. Osage County Rural Water Dist. No. 7*, 949 P.2d 1104, 1112-13 (Kan. 1997); *Stockman v. Unified Gov't of Wyandotte County*, 6 P.3d 900, 909 (Kan. App. 2000); *Noller v. GMC Truck & Coach Div.*, 772 P.2d 271, 274-75 (Kan. 1989); *Hawthorn-Melody, Inc. v. Driessen*, 518 P.2d 446, 448-49 (Kan. 1974).

The standing complication we address here evidently went unremarked in the district court until the middle of the proceedings on defendant Sprint's motion for summary judgment (on the merits) and plaintiff Bevill N.H.'s application for a preliminary injunction. In its summary judgment reply brief, Sprint noted that Robert Bevill, the eponymous corporate representative whose signature is on the contract, had in a deposition revealed the discrepancy between Bevill N.H., the plaintiff, and Bevill Del., the contracting party. Sprint argued–as just one more reason it should prevail in the suit–that Bevill N.H. lacked standing to challenge Sprint's exercise of its rights under the contract.

Bevill N.H. submitted a supplemental memorandum in support of its application for injunctive relief, in which it responded to Sprint's position on standing. Significantly, Bevill N.H. did *not* argue that it was a corporate successor to Bevill Del.; that there had been any assignment of contract rights from Bevill Del. to Bevill N.H. (which, indeed, would have been in contravention of the contract); or that Bevill Del. entered into the contract so as to make Bevill N.H. a third party beneficiary. Instead of invoking any of these traditional legal theories, it insisted that the contract language actually specified Bevill N.H. as the contracting party; that Robert Bevill executed the contract as agent/promoter of Bevill N.H.; and that the overriding intent was simply to ensure that a company controlled by Robert Bevill would be bound by the contract.

These matters were also briefly touched on by the parties at the combined hearing on their motions for summary judgment and preliminary injunction. But the focus of the proceeding was clearly on the merits of the parties' contractual dispute and, at the conclusion of the hearing, the district court granted summary judgment for Sprint without ever referring to the potential complications with standing.

On appeal, the standing question continues to take a back seat to the merits. Bevill N.H.'s opening brief does not acknowledge the problem. The last section of Sprint's answer brief challenges Bevill N.H.'s standing, but also conflates the matter to some extent with the non-jurisdictional issue of real party in interest. In its reply brief, Bevill N.H. does not resurrect the specific arguments it advanced in district court, but does return to the general idea that the crucial figure in the transaction was Robert Bevill himself–which, it contends, renders inconsequential any discrepancy between Bevill Del. as contracting party and Bevill N.H. as party plaintiff. It also asserts a new argument: that to secure several continuances of the injunction hearing, Sprint entered into a series of agreements *with Bevill N.H.* to permit uninterrupted performance in the interim, thus creating an express contractual relationship between the parties to this action.

Neither of these points demonstrates Bevill N.H.'s standing to prosecute the case. Whatever the practical importance of the role played by Mr. Bevill, the

fact remains that Sprint formally contracted with his Delaware corporation, not Bevill himself or his subsequently created New Hampshire corporation. As for the cited interim agreements, they are simply not the subject of this suit–they obviously did not even exist when the action was filed. If Sprint breached these agreements (which there is no suggestion it did), Bevill N.H. might have standing to sue for that distinct breach, but that would be a different case.

At first blush, it may seem surprising to suggest that a company which has performed work pursuant to a contract should lack standing to sue thereon. But the real question is–standing to sue about what? There would appear to be no debate regarding Bevill N.H.'s standing to seek equitable relief for any work it performed that has not been compensated. However, that is not the subject of this appeal (although a claim for unpaid services was included in the pleadings, Bevill N.H. has ignored the effect, if any, that the district court's judgment had in that respect). Rather, the exclusive focus of this appeal is Bevill N.H.'s claim that Sprint did not have the right to terminate the contract in question. For that legal claim, Bevill N.H. needs to show it has a contracting party's standing to dispute and enforce contractual terms. This is, indeed, what it has attempted to argue on appeal in response to Sprint's challenge, though, as noted above, the substance of its appellate argument has not been persuasive.

We are nonetheless reluctant to issue a conclusive decision on standing. Two points urged by Bevill N.H. in the district court give us pause, particularly in light of the inadequate attention the matter has received thus far. Bevill N.H. argued that although it had not been incorporated at the time the contract was executed, Robert Bevill was acting as its promoter and, thus, under *Source Direct, Inc. v. Mantell*, 870 P.2d 686, 691-92 (Kan. App. 1994), it became a party to the contract once it was incorporated and ratified the contract by performance. To be sure, in invoking this familiar principle of corporate law, Bevill N.H. glosses over a significant complication: its asserted promoter did not execute in his own name a contract contemplating performance by a corporation he was expected to create; the agreement indicated that Sprint was contracting directly with a corporation he had already created—and it was not Bevill N.H. However, the language of the contract in this regard is not a model of clarity. While it certainly indicates that Sprint is contracting with a pre-existing corporation and specifies Delaware as that entity's state of incorporation—both of which facts distinguish Bevill Del. from Bevill N.H.–it actually misstates Bevill Del.'s name in a manner consistent, rather, with Bevill N.H. (only the latter includes the designation "Inc." following "The Bevill Company").

Bevill N.H. pointed out this inconsistency and argued to the district court that extrinsic evidence should be allowed as to which Bevill corporation was the

-7-

intended contracting party. *See Ark. La. Gas Co. v. Kansas*, 675 P.2d 369, 371 (Kan. 1984) (following traditional rule that when contract is ambiguous, "extrinsic evidence concerning its execution is competent to determine the intention of the parties"). The district court, however, focused on the merits of the case and, consequently, left this area of inquiry undeveloped. Given the factual nature of contractual intent, this "is a matter the trial court must determine after hearing evidence on th[e] issue." *Craig v. Hamilton*, 518 P.2d 539, 543 (Kan. 1974). Accordingly, we remand the case for further proceedings and a conclusive determination of the threshold question of standing. *See Lopez v. Behles (In re American Ready Mix, Inc.)*, 14 F.3d 1497, 1500 (10 th Cir. 1994) (unless relevant facts are undisputed, issue of standing should be remanded).

The appeal is DISMISSED and the cause is REMANDED to the district court for further proceedings consistent with this order and judgment.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge